IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| BRADLEY D. YOKEM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16-cv-3048 |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Bradley D. Yokem appeals from the denial of his application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income Disability Benefits (SSI) under Title XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (collectively Disability Benefits). This appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to proceed before this Court pursuant to 28 U.S.C. § 636(c). <u>Consent to the Exercise of Jurisdiction by a United States Magistrate and Reference Order entered March 23, 2016 (d/e 9)</u>. This matter is before this Court on Yokem's Brief in Support of Motion for Summary Judgment (d/e 13) (Yokem's Motion), and Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 16)

(Commissioner's Motion).  For the reasons set forth below, Yokem's Motion is ALLOWED, the Commissioner's Motion is DENIED, and the decision of the Commissioner is REVERSED and REMANDED pursuant to sentence 4 of 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

Yokem raises narrow issues on appeal related to the Administrative Law Judge's (ALJ) characterization of Yokem's Residual Functional Capacity (RFC) and the ALJ's treatment of the hearing testimony of Vocational Expert Gary Weimhold.  The Court will focus on the facts relevant to these issues.  Yokem was born on August 21, 1969.  He completed high school.  He previously worked as a carpenter and laborer.  He last worked on September 26, 2008.  In his applications, Yokem alleged he became disabled on September 27, 2008.  The last date that Yokem was insured for Disability Benefits was December 31, 2013.  Yokem suffers from degenerative cervical disc disease, Buerger's disease, degenerative joint disease in his right shoulder, and status post lumbar spinal surgery.  Yokem also lost the tip of his dominant right index finger.  <u>Certified Transcript of Proceedings before the Social Security Administration (d/e 11) (R.)</u>, at 85, 87, 298.

On September 4, 2014, the ALJ held an evidentiary hearing. Yokem appeared with his counsel. Vocational Expert Weimhold also appeared at the hearing by telephone. R. 103. Yokem testified at the hearing, and then Weimhold testified. The ALJ asked Weimhold the following question:

> Q . . . I'd like to ask you to please assume a hypothetical individual, 45 years of age, high school education, no relevant past work for purposes of my question. I'd like to further assume the hypothetical individual that I'm referring to would be able to lift and/or carry 20 pounds occasionally, 10 pounds frequently. Further assume the hypothetical individual would be able to stand and/or walk for two hours of an eight hour work day, and sit for about six hours of an eight hour work day. The hypothetical individual would be able to occasionally climb ramps and stairs, but no ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching; no crawling. The hypothetical individual would be able to frequently reach, but only with occasional overhead reaching, frequently handle, occasionally finger and feel. The hypothetical would need to avoid temperature extremes of cold, hazards such as dangerous machinery or unprotected heights.
>
> . . . .
>
> Q Please tell us in your opinion if the hypothetical individual I described would be able to perform in any unskilled occupations, in the national economy?

R. 154-55.

Weimhold opined that such a person could perform the jobs of parking lot attendant, with 25,000 such jobs existing nationally; information clerk, with 60,000 such jobs existing nationally; and unskilled cashier II jobs limited to environments in which the person is able to sit while cashiering,

with 19,000 such jobs existing nationally.  Weimhold testified that the number of parking lot attendant jobs would be limited to jobs available in parts of the country with warmer climates due to the need to avoid extreme cold.  Weimhold opined that this additional limitation would reduce the available relevant parking lot attendant jobs by 50 percent.  R. 155-56.

Weimhold testified that his opinion was inconsistent with the Dictionary of Occupational Titles (DOT) published by the Department of Labor.  He testified that the jobs were all listed as light exertional jobs in the DOT.  R. 155.

The ALJ asked Weimhold about the inconsistencies:

Q  All right. Could you describe the inconsistencies with the Dictionary of Occupational Titles that you referred to earlier?

A  Yes; the main inconsistency would be -- the DOT would say that these jobs would be light and require up to six hours of either standing or walking. And I'm deviating from that in these reduced occupational base projections by saying that these situations the jobs could be performed with six hours of sitting and intermittent standing or walking of up to two hours during the course of a day.

Q  So if your answer is not based on the Dictionary of Occupational Titles what's it based on?

A  That would -- in other ways is it all consistent with the DOT; but this is based upon my experience and having surveys, labor markets that are relative to these kinds of jobs, and my observation of persons performing this work.

R. 157.

Yokem's attorney asked Weimhold about the inconsistencies with the DOT:

> Q  . . . And is it -- I just want to make sure I understand exactly what you're saying.  You're saying those jobs are described by the Dictionary of Occupational Titles as light jobs?
>
> A  Yes.
>
> Q  And you are saying -- you are saying that a person can sit for six hours and stand for two hours and do those jobs?
>
> A  Yes.
>
> Q  Even though they are defined by the Dictionary of Occupational Titles as light?
>
> A  Yes, sir.

R. 159.  At the end of the hearing, Yokem's attorney asked for permission to submit a post hearing brief.  The ALJ allowed the request.  R. 160.

On September 11, 2014, Yokem submitted his post hearing brief. R. 381-84.  Yokem argued that Vocational Expert Weimhold "improperly identified jobs classified as light as being able to be performed at the sedentary sit and stand limitations."  R. 381.  Yokem argued that Weimhold improperly used a definition of light work that varied from the DOT definition.  Yokem cited the Social Security Administrations ruling SSR 00-4p for the proposition that a vocational expert must follow the DOT

definitions of exertional levels of work. R. 382-83. Yokem also challenged the sufficiency of the basis for Weimhold's expert opinion. R. 383-84.

## DECISION OF THE ALJ

The ALJ issued his decision on September 26, 2014. R. 85-95. The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to his prior work considering his age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f). If the claimant cannot return to his

prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. 20 C.F.R. §§ 404.1512, 404.1560(c); Weatherbee v. Astrue, 649 F.3d 565, 569 (7th Cir. 2011); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ found that Yokem met his burden at Steps 1 and 2 of the Analysis. He had not engaged in substantial gainful activity since September 27, 2008, the date he alleged his disability began. He also suffered from the severe impairments of, "degenerative disc disease of the cervical spine; partial amputation of the right index finger; Buerger's disease; degenerative joint disease of the shoulders; and status post lumbar spine surgery." R. 87. The ALJ found at Step 3 that Yokem's impairments or combination of impairments did not meet or equal any Listing. R. 89.

At Step 4, the ALJ found that Yokem had the following RFC:

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations. The claimant can lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk two hours out of an eight hour workday, and sit for six hours out of an eight hour workday; occasionally climb ramps and stairs, but no ladders, ropes, or scaffolds; occasionally stoop, kneel, and crouch, but never crawl; frequently reach (but with only occasional overhead reaching); frequently handle; and occasionally finger and feel. He must avoid temperature extremes of cold and hazards such as dangerous machinery or unprotected heights.

R. 89. The ALJ concluded that Yokem could not perform his past relevant work as a carpenter and laborer. R. 93.

At Step 5, the ALJ found that the Commissioner met her burden to show that Yokem could perform a significant number of jobs in the national economy. The ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the opinion of vocational expert Weimhold. The ALJ stated that Weimhold's opinions were consistent with the DOT, and addressed Yokem's post hearing brief:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> The vocational expert further testified that his testimony was supplemented by his own professional experience and observations of persons performing the work identified.

> The vocational expert further testified that his professional experience indicates that the jobs he identified could largely be performed with up to six hours of sitting and intermittent standing and walking up to two hours per day. In a post-hearing brief the claimant's representative objected to this testimony stating that the vocational expert "improperly identified jobs classified as light as being able to be performed at the sedentary sit and stand limitations," and asserted that the jobs identified should not be considered by the undersigned. However, the vocational expert's testimony that the jobs identified could also be performed within the sit/stand parameters of the sedentary exertional level is immaterial as the claimant's residual functional capacity is for a range of light work. The vocational expert testified that the claimant could perform the identified representative occupations given the specific limitations of the claimant's residual functional capacity, which falls within the light exertional level.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

R. 95.

Yokem appealed the ALJ's decision. On January 7, 2016, the Appeals Council denied Yokem's request for review. The decision of the ALJ then became the final decision of the Commissioner. R. 3. Yokem then filed this action for judicial review.

ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ must articulate at least minimally her analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ erred in this case because he failed to recognize the conflicts between Weimhold's opinions and the job descriptions in the DOT, and he failed to resolve those conflicts. The Social Security Administration requires vocational experts to opine consistently with the exertional definitions in the DOT or to provide a reasonable basis for any opinions that conflict with the DOT. SSR 00-4p, 2000 WL 1898704, at *2 (December 4, 2000). If conflicts exist between the DOT and a vocational expert's opinion in a case, the ALJ cannot simply rely on either the vocational expert or the

DOT. The ALJ must resolve the conflict and explain the basis for that resolution. SSR 00-4p, 2000 WL 1898704, at *2.

Weimhold's opinions in this case conflicted with the DOT. Weimhold opined that a person with Yokem's age, education, work experience, and RFC could perform the jobs of parking lot attendant, information clerk, and cashier II. The DOT classified these three jobs of as light work. R. R. 154-55; DOT, 915.473-101 (parking lot attendant); 237.367-018 (information clerk); 211.462-010 (cashier II). The Social Security Administration follows the DOT definitions and descriptions of jobs. The Social Security Administration and the DOT divide jobs into categories based on the levels of strength or exertion ("exertional levels") that jobs require to perform seven activities: sitting, standing, walking, lifting, carrying, pushing, and pulling. The exertional levels are sedentary, light, medium, heavy, and very heavy. SSR 83-10, 1983 WL 31251, at *2; see 20 C.F.R. § 404.1567; DOT, Appendix C, Part IV, Physical Demands – Strength Rating.

Light work has the following exertional requirements for the six activities of sitting, standing, walking, lifting, carrying, pushing, and pulling:

> 2. *Light work*. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing-- the primary difference between sedentary and most light jobs. A

> job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, 1983 WL 31251, at *5-*6 (January 1, 1983). Under this definition, light work requires being able to walk or stand six hours in an eight-hour workday. Under the ALJ's hypothetical question, the person with Yokem's RFC could only stand or walk for two hours in an eight-hour workday. Weimhold testified that his opinions conflicted with the DOT on this point. Weimhold testified that, "the main inconsistency would be -- the DOT would say that these jobs would be light and require up to six hours of either standing or walking."

The ALJ erroneously stated in his opinion that Weimhold's opinions were consistent with the information in the DOT.  R. 95.  Because the ALJ did not acknowledge the conflict, he did not resolve the conflict.  He merely relied on Weimhold's opinions.  When a conflict exists, the ALJ cannot merely rely on either the DOT or the expert's opinion.  The ALJ must resolve the conflict on the record and explain the basis for the resolution.  SSR 00-4p, at *2.  The error requires reversal and remand.

The ALJ also did not address Yokem's challenge in his post-trial brief to the sufficiency of the basis of Weimhold's opinions.  Weimhold testified that he based his opinions that conflicted with the DOT "upon my experience and having surveys, labor markets that are relative to these kinds of jobs, and my observation of persons performing this work." R. 157.  Yokem argued that such generalized statements were not sufficient to show that an expert opinion was based on reliable methods and data.  On remand the ALJ should address this issue.  See Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) ("If the basis of the vocational expert's conclusions *is* questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of [Federal Rule of Evidence] 702) to find out whether the purported expert's conclusions are reliable.")

Yokem also correctly points out that the Seventh Circuit Court of Appeals has more recently questioned the validity of some methods and data used by vocational experts to arrive at their opinions. See Alaura v. Colvin, 797 F.3d 503, 507-08 (7th Cir. 2015) (criticizing a vocational expert's methodology in opining on the number of particular jobs that exist in the economy).

On remand, the ALJ must take additional testimony to explain more fully his opinions and the basis for his opinions. Weimhold should explain more fully the nature of the experience, surveys, labor markets, and observations on which he based his opinions in this case. In light of his opinions conflicts with the DOT and the concerns expressed by the Seventh Circuit in Alaura, the ALJ will need some additional information to evaluate the reasonableness of Weimhold's opinions and to resolve the conflict between the two opinions. The Appeals Council and any reviewing court will also need this information on any subsequent appeal.

Weimhold should also clarify the conflict between his opinion and the DOT. Weimhold testified that the 19,000 cashier II jobs to which he opined were a subset of the cashier II job that only required standing or walking for a total of two hours in an eight-hour workday. R. 155-56. He did not so testify about the parking lot attendant and information clerk jobs. Weimhold

should clarify whether he is opining that: (1) the DOT is simply wrong about these two jobs; or (2) the numbers the two jobs to which he opined were a subset of these jobs that only required standing or walking for a total of two hours in an eight-hour workday. On remand, Weimhold should clarify this point.

Yokem also argues that the ALJ erred in finding that Yokem had the RFC to perform a limited amount of light work. Yokem argues that he could only perform sedentary work under the ALJ's RFC. Sedentary work means that a job requires a person to perform sitting, standing, lifting, carrying, walking, pushing, and pulling as follows:

> 1. *Sedentary work*. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251at *5.  Yokem argues that the ALJ should have limited him to sedentary work rather than light work because he was limited to standing or walking for two hours in an eight-hour workday, which meets the definition of sedentary work not light work.

The Court sees no error.  Impaired individuals often can perform some, but not all, of the seven activities and exertional level.  In this case, the ALJ found that Yokem could lift or carry 20 pounds frequently and ten pounds occasionally.  That finding is consistent with light work.  Yokem does not challenge that finding.  The ALJ also found that Yokem could stand or walk for two hours in an eight-hour workday.  That finding is consistent with sedentary work.  Yokem does not challenge this finding. Yokem's exertional ability, therefore, was between categories.  In such situations, the ALJ can properly find that the person has the RFC to perform a limited range of work in the greater exertional category.  See Haynes v. Barnhart, 416 F.3d 621, 628 (7th Cir. 2005).  The ALJ defines that limited ability in the RFC.  The ALJ did so here.  The ALJ did not err in this finding.

Yokem argues that the RFC finding is internally inconsistent.  He argues that a person cannot lift or carry ten pounds frequently if he can only stand or walk occasionally.  As quoted above, "frequently" means

performing the activity from 1/3 to 2/3 of the workday, and "occasionally" means performing the activity up to 1/3 of the workday.  He argues that a person cannot lift or carry more than 1/3 of the workday when he can only stand or walk for less than 1/3 of the day.

Yokem is mistaken.  The ALJ was defining Yokem's ability to perform seven distinct acts.  The ALJ found that Yokem was impaired, but had the residual strength to lift or carry 10 pounds frequently (1/3 to 2/3 of an eight-hour workday) and 20 pounds occasionally (up to 1/3 of an eight-hour workday).  The ALJ also found that Yokem had the residual strength to stand or walk for two hours, or 1/4, of an eight-hour workday.  The two are not mutually inconsistent.  A person could intermittently lift 10 pounds while sitting for a total of four hours, and intermittently carry 10 or 20 pounds for another two hours.  The ALJ did not err in making these two findings.

The issue at Step 5 is whether the Commissioner can demonstrate Yokem can find work with these limitations and the other limitations set forth in the RFC.  Weimhold opined that such a person could work three jobs that exist in the national economy.  Weimhold acknowledged that his opinion conflicted with the information in the DOT.   The ALJ erroneously stated that Weimhold's opinion was consistent with the DOT, and thereby also erroneously failed to resolve the conflict between Weimhold's opinions

and the DOT.  The ALJ further did not address Yokem's post-trial brief challenging the sufficiency of Weimhold's opinions.  These errors require reversal and remand.

The Commissioner argues that Yokem waived any right to object to the inconsistencies between Weimhold's opinions and the DOT or any insufficiencies in Weimhold's opinions.  The Commissioner argues that Yokem waived these issues because he did not raise these issues before the ALJ, citing Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002).  The Commissioner is incorrect.  The ALJ has an affirmative duty under SSR 00-4p to address any conflicts between a vocational expert's opinions and the DOT.  The ALJ's failure to meet that duty may be raised on appeal even if not raised at the hearing.  Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006).  The Prochaska Court distinguished the Donahue decision because SSR 00-4p did not apply in Donahue because the ALJ's opinion was entered before SSR 00-4p was issued.  Id.; see Donahue, 279 F.3d at 446 (SSR 00-4p did not apply in this case).[1]

Furthermore, the conflict between Weimhold's opinion and the DOT was raised on the record.  The ALJ and Yokem's attorney both questioned

---

[1] The Commissioner also cites Barrett v. Barnhart, 355 F.3d 1065 (7th Cir. 2004), to support her waiver argument.  The Barrett court mentioned the waiver issue, but decided the case on other grounds.  Id., at 1067-68.  The Court concludes that the subsequent decision in Prochaska is more directly on point and is controlling.

Weimhold about the conflicts between his opinions and the DOT. The ALJ also gave Yokem permission to file a post hearing brief. Yokem specifically raised his arguments regarding the conflict between Weimhold's opinions and the DOT, and the sufficiency of Weimhold's opinions in that brief. There was no waiver.

THEREFORE, Plaintiff Bradley Yokem's Brief in Support of Motion for Summary Judgment (d/e 13) is ALLOWED, Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 16) is DENIED, and the decision of the Commissioner is REVERSED and REMANDED pursuant to sentence 4 of 42 U.S.C. § 405(g). THIS CASE IS CLOSED.

ENTER: February 23, 2017

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE